
UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VINCENT THAKUR SINGH,<br><br>Defendant. | No. 2:12-cr-00352-TLN<br><br>**ORDER** |

This matter is before the Court on Defendant Vincent Thakur Singh's ("Singh") Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A)(i).  (ECF No. 166.)  The Government filed an opposition.  (ECF No. 171.)  Singh filed a reply.  (ECF No. 180.)  For the reasons set forth below, the Court DENIES Singh's motion.

///
///
///
///
///

1

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Singh operated a Ponzi scheme to defraud at least 190 creditors/investors out of over 20 million dollars. (ECF No. 47 at 5.)  He operated Perfect Financial Group, which he used to solicit funds to make short-term, hard money loans.  (*Id*.)  Singh represented to investors that their investments would be both risk-free with profitable high rates of return.  (*Id*.)  Instead of repaying any investor his principal, Singh used the money to fund his personal lifestyle, purchase residential properties, make a down payment on commercial real estate for one of his businesses, purchase a convenience store franchise for his brother, and fund his sister's movie project.  (*Id*. at 6.)  Singh used a total of $17,712,474 of investor money for these purposes, and the total amount of loss for all victims was approximately $20,626,886.81.  (*Id*.)

In October 2012, a grand jury returned a 24-count Indictment against Singh charging him 21 counts of wire fraud, 2 counts of false statements in bankruptcy proceedings, and 1 count of bankruptcy bribery.  (ECF No. 1.)  On March 20, 2014, pursuant to a written plea agreement, Singh pleaded guilty to counts 15 and 23 of the Indictment.  (ECF No. 34, 37.)  The Court then sentenced Singh to 188 months imprisonment.  (ECF No. 57.)  On June 24, 2022, Singh filed the instant motion for compassionate release.  (ECF No. 166.)

Singh is currently serving his sentence at USP-Atwater.  (ECF No. 171-1 at 2.)  His projected release date is February 20, 2026, based upon the application of his good conduct time.  (*Id*.)  Singh has served approximately 123 months of his 188-month sentence. (*Id*. at 3.)

### II.   STANDARD OF LAW

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010).  The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) sets forth a rare exception to this general rule.  Relief under 18 U.S.C. § 3582(c)(1)(A), however, is only available upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.  18 U.S.C. §

1  3582(c)(1)(A).

2  A defendant is eligible for compassionate release only if the defendant can demonstrate there are "extraordinary and compelling reasons" for a sentence reduction and such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement "may inform a district court's discretion," but is not binding on compassionate release motions filed by defendants. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Thus, district courts have discretionary authority in determining whether to classify reasons provided by defendants as "extraordinary and compelling" in compassionate release motions. *See id*. at 801-02.

In addition to "extraordinary and compelling" reasons, district courts may and often do evaluate whether the defendant demonstrates that the defendant is "not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); *see United States v. Capito*, No. 10-cr-08050-PCT-MTL, 2021 WL 4552954, at *2 (D. Ariz. Oct. 5, 2021). The Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *Aruda*, 993 F.3d 799. Thus, the defendant's dangerousness is persuasive, but not binding. *Id*. at 802.

Finally, courts must consider the 18 U.S.C. § 3553(a) ("§ 3553(a)") factors before granting compassionate release. See 18 U.S.C. § 3582(c)(1)(A). Courts must evaluate the § 3553(a) factors "to the extent that they are applicable" in order to determine whether they support a shorter sentence. *Aruda*, 993 F.3d 800.

**III.    ANALYSIS**

    A.    Exhaustion

In the instant case, it is undisputed that Defendant has met the threshold exhaustion requirement. Defendant made a request to the warden on April 30, 2022. (ECF No 166 at 14.) The warden denied Defendant's request on May 13, 2022. (*Id.* at 15.) Because more than 30 days have elapsed since April 30, 2022, Defendant has met the exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A).

3

B.     Extraordinary and Compelling Reasons

Singh argues five extraordinary and compelling reasons that make him eligible for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

i.     Sentence Disparity Due to Guideline Changes

Defendant argues there is a significant disparity between the sentence he received in 2014 and the sentence he would receive if he were sentenced after November 1, 2015, because of guideline changes.  (ECF No. 166 at 3.)  The government argues that Singh's sentencing disparity argument is misplaced and must be raised under 18 U.S.C. § 3582(c)(2) not 18 U.S.C. § 3582(c)(1)(A)(i).  (ECF No. 171 at 9-10.)[1]   The government further argues that even if Singh could rely on a change in the Sentencing Guidelines to seek compassionate release under § 3582(c)(1)(A), his argument still fails because Amendments 791 and 792 did not create a sentencing disparity in his case.  (*Id.*)

It is undecided in this circuit whether sentence disparities constitute an extraordinary and compelling reason for release.  The government cites *United States v. Roper*, D.C. No. 3:12-CR-05085-BHS-1, 2022 WL 251970, at *7 (W.D. Wash. Jan. 27, 2022), which is pending appeal in the United States Court of Appeals for the Ninth Circuit as a reason to reject sentence disparities as a factor in the analysis.  (*Id.*)  *See also United States v. Roper*, Ninth Cir. C.A. No. 22-30021 (discussing split in authorities).  However, this case remains undecided, and courts in this district have found that statutory sentence changes may constitute an extraordinary and compelling reason that weighs in favor of compassionate release.  *See United States v. Steward*, No. 1:95-CR-

---

[1]     To establish eligibility under § 3582(c)(2), "a defendant must show (1) that his sentence was 'based on' a guideline range that has since been lowered, and (2) that the reduction he seeks is 'consistent with applicable policy statements issued by the Sentencing Commission.'" Rodriguez-Soriano, 855 F.3d at 1040, 1042 (9th Cir. 2017) (quoting 18 U.S.C. § 3582(c)(2)). Further, "[A] reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. 3582(c)(2) and is not consistent with [the applicable] policy statement if . . . none of the amendments listed in subsection (d) is appliable to the defendant." U.S.S.G. §1B.10(a)(2).  Singh does not make an argument under this section of the compassionate relief statute, and the government also correctly asserts that he would not be entitled to relief under this section. Amendments 791 and 792, the amendments Singh relies on to argue sentence disparity, are not listed in §1B.10(d).  Therefore, even if Defendant filed a motion pursuant to § 3582(c)(2), he would not be entitled to relief.

4

05111-JLT, 2022 WL 1645087, at *4 (E.D. Cal. May 24, 2022) (holding the change to § 924(c) sentencing law has created an extraordinary and compelling sentencing disparity that warrants relief.)

Therefore, this court will consider if the 791 and 792 amendments are compelling reasons for release. Amendment 791 adjusted the monetary tables in U.S.S.G. §2B1.1 (Theft, Property, Destruction, and Fraud), §2B2.1 (Burglary), §2B3.1 (Robbery), §2R1.1 (Bid-Rigging, Price-Fixing or Market-Allocation Agreements Among Competitors), §2T4.1 (Tax Table), §5E1.2 (Fines for Individual Defendants), and §8C2.4 (Base Fine) to account for inflation. *See* U.S.S.G., sup. App'x C, amend. 791 (2015). This court finds that an adjustment to the loss table due to inflation is not an extraordinary and compelling reason to justify a sentence reduction. This change is based on economic shifts, attempting to ensure equity in sentencing over time. It in no way demonstrates a basis for reducing Defendant's sentence, for a reduction in sentence based on these new tables would distort and misinterpret the purpose of their adjustment. Accordingly, the court finds that there are no extraordinary and compelling reasons to grant relief based on the 791 amendment to the sentencing guidelines.

Amendment 792 changed the victims table to reflect the Commission's conclusion that the guideline should place greater emphasis on the extent of harm that particular victims suffer as a result of the offense, rather than the number of victims. *See* U.S.S.G., sup. App'x C, amend. 792 (2015). Here, although Defendant argues that he would no longer be eligible for the 100 victims increase because it has been since deleted, he does not give the court a reason why his sentence would generally decrease under the new structure focused on the severity of harm. As the Government correctly notes, "[Defendant] does [not] show that his fraud did not cause substantial financial hardship to 5 or more victims". (ECF No. 171 at 12.) Thus, Defendant fails to show that he would not have received the 4-level increase under the amended guideline. As a result, the court finds that there are no extraordinary and compelling reasons to grant relief based on the 792 amendment to the sentencing guidelines.

///

///

       ii.  Earned Time Credit Disparity

Defendant argues that his custodial sentence would be significantly reduced if he had been able to accrue First Step Act earned time credit ("ETC") from the beginning of his sentence. (ECF No. 166 at 4.)  The government asserts (1) the awarding of ETC credits is not meant to be retroactive, (2) this Court lacks jurisdiction to review individualized, discretionary BOP decisions concerning the application of ETCs, and (3) that Defendant fails to demonstrate that he would have earned any ETCs between 2014 and 2018. (ECF No. 171 at 13-14.)

Defendant responds in his reply by calculating the ETC he believes he would have received.  (ECF No. 180 at 4-6.)  He calculates that he would have earned 756 extra days from 2014-2018, or approximately two years.  (*Id*.)  This is unpersuasive.  The Court does not find the non-retroactivity of the ETC program to rise to the level of extraordinary and compelling reasons for release.

       iii.  Home Confinement Release Under the CARES Act.

Defendant argues he meets every criterion for Home Confinement Release under the CARES Act, but still has not been released.  (ECF No. 166 at 5.)  The Government responds by arguing the CARES Act empowers BOP, not this Court, with the authority to decide where an inmate shall be incarcerated, a decision that includes Home Confinement Release.  (ECF No. 171 at 17.)

The Court agrees with the Government.  It is the province of BOP, not this Court, to make determinations of Home Confinement Release under the CARES Act.  Defendant has provided no authority that would empower this Court to act pursuant to the CARES Act and order Home Confinement Release.  Further, the Court finds that the alleged failure of BOP to place Defendant on Home Confinement Release does not, in this instance, create an extraordinary and compelling reason for release.

       iv.  COVID Risks

Defendant argues he is at a higher risk of complications for COVID-19 and new variants constituting an extraordinary and compelling reason for his release.  (ECF No. 166 at 7.) Specifically, he argues that he is over the age of 50 (53-years-old) and is at higher risk of

complications from COVID-19 due to living in a correctional facility. (*Id*.) The government disagrees and argues that a vaccinated defendant — like Singh — cannot establish the kind of "extraordinary and compelling" reasons that might justify compassionate release. (ECF No. 171 at 15.)

The Court disagrees with the Government but nonetheless finds Defendant has failed to establish extraordinary and compelling reasons for release based on COVID-19 risk.[2] Here, other than Defendant being over 50 years old, he does not cite any reasons that he is particularly at a high risk of contracting COVID-19. The CDC instructs that as you get older, your risk of being hospitalized or dying from COVID-19 increases.[3] Yet, the CDC places the age of heightened COVID-19 risk as 65 years old.[4] Defendant is 53. Additionally, Singh does not currently have a bad case of COVID-19 or any health conditions that make him more susceptible or at risk for COVID-19. (ECF No. 166 at 7.) For these reasons, in conjunction with the fact that Singh is vaccinated for COVID-19, the Court concludes Defendant has failed to establish extraordinary and compelling reasons for release based on COVID-19 risk.

v. <u>Defendant's Rehabilitation Efforts</u>

Singh asserts that his rehabilitation efforts are an extraordinary and compelling reason for release because he has made every effort to better himself and others around him while incarcerated. (ECF No. 166 at 8.) The government disagrees and notes that Defendant's rehabilitation, while commendable, does not warrant release because the standard for compassionate release demands more than good performance in prison. (ECF No. 171 at 16.)

This Court rejects the Government's argument that rehabilitation efforts alone cannot be a reason for compassionate release. *Aruda* instructs that district courts have discretionary authority

---

[2] The Court recognizes that other judges within this District have applied a "rebuttable presumption" test to a defendant's vaccination status. United States v. Mathews, 557 F. Supp. 3d 1057, 1061 (E.D. Cal. 2021). The Court does not apply this test and instead approaches a defendant's vaccination status on a case-by-case basis pursuant to the discretionary authority prescribed by *Aruda*. *See* United States v. Aruda, 993 F.3d 797, 801-02 (9th Cir. 2021).
[3] *See generally* Centers for Disease Control, Coronavirus Disease 2019 (COVID-19), COVID-19 Recommendations for Older Adults, available https://www.cdc.gov/aging/covid19-guidancehtml (last visited November 11, 2022).
[4] *Id*.

7

in determining extraordinary and compelling reasons for release. *Aruda* at 801-02. Therefore, it is possible for a defendant to have such an extraordinary rehabilitative record to warrant compassion release.

The Court commends Singh for his participation in rehabilitative programming, including working for Federal Prison Industries Factories, volunteering his time to tutor GED students, and taking advantage of other educational and rehabilitation programs offered by the BOP. (ECF No. 166 at 8.) This participation, however, does not rise to the level of extraordinary and compelling circumstance that warrants relief.

### C. § 3553(a) factors

Finally, because the Court finds Defendant has failed to establish an extraordinary or compelling reason for relief, the Court need not review the section 3553(a) factors.

### III. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion for Compassionate Release. (ECF No. 166.)

IT IS SO ORDERED.

DATED: January 30, 2023

Troy L. Nunley
United States District Judge

8